Kurt STRAUSS

v.

DELTA AIR LINES, INC.,
and
Douglas Aircraft Company, Inc.
Civ. A. No. 30610.

United States District Court
E. D. Pennsylvania.
July 17, 1962.

Morton Rosen and Freedman, Landy & Lorry, Philadelphia, Pa., for Kurt Strauss, plaintiff.

Robert E. Jones and Rawle & Henderson, Philadelphia, Pa., for Delta Air Lines, Inc., defendant.

George J. Miller and Dechert, Price & Rhoads, Philadelphia, Pa., for Douglas Aircraft Company, Inc., defendant.

LUONGO, District Judge.

Plaintiff Strauss, a passenger, was injured on May 12, 1960 when an airplane manufactured by defendant Douglas Aircraft Company, Inc. and operated by defendant Delta Air Lines, Inc. encountered turbulence over Miami, Florida. Strauss was injured when he was thrown from his seat notwithstanding that his seat belt was fastened. The complaint alleges,

as the basis for recovery against Douglas, negligence in the manufacture and assembly of the seat belt and its component parts. Delta was also named as a defendant in Strauss' suit on the ground that it negligently failed to provide plaintiff with a safe aircraft. Delta filed a cross claim against Douglas asserting liability over and seeking indemnity or contribution.

This is a diversity action. Strauss is a citizen of Pennsylvania. Defendant Douglas is a Delaware corporation with its principal place of business in California. Douglas has moved to quash service and to dismiss the complaint on the ground that this Court does not have jurisdiction over it. The question before me is whether Douglas is doing business in Pennsylvania so as to be subject to the jurisdiction of this Court.

Plaintiff initially attempted to effect service on Douglas pursuant to the provisions of the Pennsylvania Business Corporation Law, 15 P.S. § 2852–1011, subd. B and 1011, subd. C:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth. * * *

"C. For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'."

This Court, in an opinion and order dated April 9, 1962, quashed service un-

der § 2852–1011, subd. B on the authority of Rufo v. Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123 (1961) since the cause of action admittedly did not arise from acts or omissions of Douglas within the Commonwealth of Pennsylvania. Thereafter, plaintiff made service pursuant to the provisions of Pennsylvania Rule of Civil Procedure § 2180(c), 12 P.S.Appendix by transmitting a copy of the complaint by registered mail to the Secretary of the Commonwealth and to Douglas in California.

Pennsylvania Rule of Civil Procedure 2180 provides:

"Rule 2180. Service of Process

"(a) Service of process within the county in which the action is instituted shall be made upon a corporation or similar entity by the sheriff of that county by handing a [true and attested] copy thereof, attested by the prothonotary or sheriff or certified by the plaintiff to be a true copy,

"(1) to an executive officer, partner or trustee of the corporation or similar entity; or

"(2) to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity; or

"(3) to an agent, authorized by appointment to receive service of process; or by delivering an attested or certified copy thereof in the manner provided by law to a statutory agent authorized to receive service of process.

\* \* \* \* \*

"(c) If service cannot be made under any of the methods set forth in Subdivisions (a) or (b) of this rule, the court upon petition shall authorize service by registered mail directed to the Secretary of the Commonwealth and to the corporation or similar entity at its last registered address or principal place of business, or by publication as the court may direct."

Douglas asserts that it is a foreign corporation not doing business in Pennsylvania and that service on it under the provisions of Rule 2180(c) is ineffective. Plaintiff contends that the service was effective because of Douglas' "extensive contacts" in Pennsylvania.

For the purpose of determining the issue of doing business, I accept the following facts which appear in the record:

Douglas has not procured a certificate from the Secretary of the Commonwealth to do business in Pennsylvania. During the past two years it has kept a fluctuating number of employees here. Five employees were assigned to the Naval Aviation Supply Office and the Naval Air Materiel Center to assist and instruct government personnel in the operation and service of aircraft supplied by Douglas, and to advise on spare parts and on the installation and monitoring of equipment used in making missiles. Three employees were assigned to inspect and test goods purchased by Douglas from General Electric Company, two at Philadelphia and one at Neville Island, Pittsburgh. Douglas also employed in Pennsylvania several stenographers to assist the above-mentioned employees.

In 1960 and 1961 Douglas expended over $2,000,000.00 for advertising in publications which were circulated in Pennsylvania, of that amount $700,000.00 was spent for advertising in Holiday magazine and the Saturday Evening Post, both published in Pennsylvania. Douglas has five major suppliers of basic materials and equipment in Pennsylvania and, within the last two years, has purchased in Pennsylvania more than $5,000,000.00 worth of products consisting of more than 150,000 separate items. It uses the Mellon National Bank of Pittsburgh, Pennsylvania as a credit line bank and has had at various times balances with that bank ranging between $1,000,000.00 and $3,500,000.00. Its officers, on occasion, have been required to come into Pennsylvania for brief periods in connection with the securing and processing of loans.

In determining whether foreign corporations are subject to in personam jurisdiction, the Pennsylvania courts, for many years, applied only the "solicitation-plus" test. Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 135 A. 755 (1927); Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 79 A.2d 222 (1951); Law v. Atlantic Coast Line R. R. Co., 367 Pa. 170, 79 A.2d 252 (1951); Partin v. Michaels Art Bronze Co., Inc., 202 F.2d 541 (3rd Cir. 1953); Elliott v. United States Steel Export Company, 186 F. Supp. 57 (D.C.E.D.Pa.1960).

 In 1951 the Pennsylvania Business Corporation Law was amended by the addition of 15 P.S. § 2852–1011, subd. B and 1011, subd. C, supra. That amendment broadened considerably the concept of doing business but its application was limited to cases in which the cause of action arose from acts or omissions within the Commonwealth. Rufo v. Bastian-Blessing Co., supra. For that reason, as we earlier held, it is not available to plaintiff here. Except to the limited extent that it has been modified by the amendment to the Business Corporation Law, the "solicitation-plus" standard of doing business is still followed in Pennsylvania and, I am bound to apply Pennsylvania law. Partin v. Michaels Art Bronze Co., Inc., supra. Applying that test to the facts before me I conclude that Douglas is not subject to the jurisdiction of this Court. There is no evidence of any solicitation by Douglas within the Commonwealth; it has no agents or employees here with power to bind it contractually; it has no warehouses, plants, or offices here; it has no employee in Pennsylvania to adjust complaints. Its only activities in Pennsylvania consist of the work of a handful of technical advisers, some serving at government installations and some at sites where defendant's suppliers are located; it purchases material and equipment from suppliers in Pennsylvania, advertises in magazines circulated here and borrows money from a Pennsylvania bank. The quality and quantity of those activities fall far short of meeting the Pennsylvania standard of doing business.

Plaintiff urges that federal courts, in diversity cases, should not be bound by state criteria for determining whether a foreign corporation is doing business in a state. Jaftex Corporation v. Randolph Mills, Inc., 282 F.2d 508 (2nd Cir. 1960) and the concurring opinion of Chief Judge Biggs in Partin v. Michaels Art Bronze Co., Inc., supra. A factual analysis of the cases cited by plaintiff as enunciating "modern standards" for the determination of the issue of doing business reveals, however, that in most of them the cause of action before the court was related to defendant's activities within the state: International Shoe Company v. Washington, 326 U.S. 310, 319–320, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Company, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 251–252, 258, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926 (1943); Parmalee v. Iowa State Traveling Men's Ass'n, 206 F.2d 518, 44 A.L.R.2d 410 (5th Cir. 1953), cert. den. 346 U.S. 877, 74 S.Ct. 125, 98 L.Ed. 384 (1953); Parmalee v. Commercial Travelers Mut. Acc. Ass'n of America, 206 F.2d 523 (5th Cir. 1953); Kahn v. Maico Company, 216 F.2d 233 (4th Cir. 1954); Jenkins v. Dell Publishing Company, 130 F.Supp. 104 (D.C.W.D. Pa.1955); Marlow v. Hinman Milking Machine Co., Inc., 7 F.R.D. 751 (D.C.D. Minn.1947); Williams v. Rose, 403 Pa. 619, 170 A.2d 577 (1961). The absence of relationship between the cause of action asserted and defendant's activities within the state led Judge Biggs to join in the dismissal of the action in Partin. The importance of that factor is emphasized by the following excerpt from his concurring opinion, 202 F.2d at page 545:

"I would vote to reverse the court below were it not for the fact that the subject matter of the suit does not arise out of the sale of parking meters by the defendant in Pennsylvania. The cause of action in the

124

instant case is really unrelated to the activities of the defendant in the Commonwealth of Pennsylvania. Cf. Woodworkers Tool Works v. Byrne, 1951, 9 Cir., 191 F.2d 667. The instant case does not, therefore, meet the test laid down by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310, 316–317, 66 S.Ct. 154, 90 L.Ed. 95, * * *"

I am not convinced that the tests applied in the cases cited above are any more "modern" or liberal than that embodied in the definition of doing business in 15 P.S. § 2852–1011, subd. C. In those cases cited by plaintiff, while that fact (relationship of the cause of action to activities within the state) was not expressly stated to be a jurisdictional sine qua non, nevertheless it was present and was apparently relied upon by each of the courts in determining that the defendant was subject to its jurisdiction. So limited, the law applied in those cases does not differ materially from that applicable in Pennsylvania. Plaintiff's real difficulty is that he does not come within the purview of the liberalizing provision of § 2852–1011, subd. C because his cause of action did not arise from acts or omissions of the defendant in Pennsylvania. To apply the liberalized standards to a case in which the cause of action was wholly unrelated to defendant's activities within the state would, in my view, require going far beyond what the courts did in the cases relied upon by plaintiff.

The cases cited by plaintiff in which the cause of action did not occur within the state, e. g. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and Moore v. Ohio River Company, 406 Pa. 272, 177 A.2d 493 (1961), are not apposite. The standards applied in that class of cases cannot be characterized as "modern", instead, defendants' activities within the state were so regular and substantial as to amount to a virtual "presence" there. In Perkins defendant was a Philippine corporation whose activities were interrupted by war. Its president, who was also general manager and principal stockholder, was physically present in Ohio where he transacted, from his home, such of defendant's business as could be transacted during that period of time. In Moore, defendant's principal place of business was in the state which exercised jurisdiction over it.

By any of the standards discussed above, Douglas' activities within the Commonwealth of Pennsylvania do not constitute doing business here such as to make it amenable to service of process for a cause of action *wholly unrelated to its activities within the Commonwealth*. Its motion to quash service of plaintiff's complaint will, therefore, be granted and plaintiff's complaint and the cross claim of Delta Air Lines, Inc. against Douglas will be dismissed.