## William GIULIANO

v.

## ALITALIA AIRLINES, INC.

### Civ. A. No. 32169.

United States District Court
E. D. Pennsylvania.
June 10, 1963.

Anthony D. Pirillo, Jr., Carano, Kunken & Pirillo, Philadelphia, Pa., for plaintiff.

H. Wallace Roberts, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for defendant.

CLARY, Chief Judge.

Defendant, a nonregistered foreign corporation, has moved to dismiss this action for lack of jurisdiction and to quash service of the summons and complaint on the grounds that defendant is neither present nor doing business within the jurisdiction of the Court.

Plaintiff complains that he sustained a fracture of the hip while touring in Italy on October 21, 1960; that defendant Alitalia agreed to reserve space for him

on an October 22, 1960 flight to the United States; that the airline failed to provide the agreed accommodations, and that as a result of this failure, plaintiff suffered extensive damages. Service of the complaint was made upon an employee of defendant at its Philadelphia office, admittedly in accord with Rule 4 of the Federal Rules of Civil Procedure and Rule 2180 of the Pennsylvania Rules of Civil Procedure, 12 P.S.Appendix. Thus, the precise issue now before the Court is whether defendant is subject to service of process within this jurisdiction.

 The jurisdiction of the Court is invoked upon the basis of diversity only, the plaintiff being a citizen of the Commonwealth of Pennsylvania, and the defendant an Italian corporation not registered in Pennsylvania. The District Court, in diversity suits of this nature, must rely upon State standards of service of process. Florio v. Powder Power Tool Corp., 248 F.2d 367 (3 Cir. 1957); Partin v. Michaels Art Bronze Co., Inc., 202 F.2d 541 (3 Cir. 1953); Allentown Record Co., Inc. v. Agrashell, Inc., 101 F.Supp. 790 (E.D.Pa.1951); Strauss v. Delta Air Lines, Inc., 207 F.Supp. 120 (1962).

Traditionally, the Pennsylvania Supreme Court has subjected to impersonam jurisdiction only those nonregistered foreign corporations which are found to be doing business within the Commonwealth. In Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 135 A. 755 (1927), it was held that the mere solicitation of business did not constitute the doing of business in Pennsylvania. This rule was affirmed in Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 79 A.2d 222 (1951) and Law v. Atlantic Coast Line R. R. Co., 367 Pa. 170, 79 A.2d 252 (1951). The Lutz case held that a foreign corporation is not doing business within Pennsylvania unless its local solicitors have authority to bind the corporation. Subsequently, the Pennsylvania Business Corporation Law, § 2852–1011 was amended by the addition of subsec-

tion C, a much expanded definition of doing business. This amendment is limited in application to causes of action arising out of acts or omissions of the corporation within the Commonwealth, and to that extent overrules the Shambe, Lutz and Law cases. Rufo v. The Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123 (1961), Florio v. Powder Power Tool Corp., supra. However, the "solicitation plus" rule of these cases still retains vitality in those areas not precluded by Section 2852–1011.

The original subsection C was enacted in 1951 (1951–52 Laws of Pa., p. 1489) and was repealed in 1957 (1957 Laws of Pa., p. 766). It was re-enacted in 1959 (1959 Laws of Pa., p. 1436) and stands today with only slight alteration from the original form:

> "C. For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'." 15 P.S. § 2852–1011, sub. C (sup. 1962).

Were this definition applicable to the instant case, there would be no question that defendant Alitalia is doing business in Pennsylvania. However, the definition of subsection C is limited by its terms ("For the purposes of this section * * *") to Section 2852–1011 of the Business Corporation Law. Subsection A concerns only *registered* foreign corporations; subsection B, only nonregistered foreign corporations, where the cause of action arises out of acts or omissions of the corporation within the Commonwealth. Thus, it is only in these limited circumstances that the new statutory definition applies.

Defendant is not registered to do business in Pennsylvania and plaintiff does

not contend that the claim arises out of any acts or omissions of Alitalia within the State. The event complained of occurred entirely in Italy where the agreement to supply transportation was alleged to have been made and broken. Therefore, the definition of subsection C is not applicable here.

But the "solicitation plus" standard of the Pennsylvania cases was applicable to all foreign corporations against which service of process was attempted. Thus, my colleague Judge Luongo recently found that "[e]xcept to the limited extent that it has been modified by the amendment to the Business Corporation Law, the 'solicitation-plus' standard of doing business is still followed in Pennsylvania * * *", Strauss v. Delta Air Lines, Inc., supra, 207 F.Supp. at 123. There were no State Supreme Court or higher Federal decisions on this precise issue to guide Judge Luongo, and there have been none since, but I agree that the Pennsylvania Supreme Court would reach this same result. If subsection C were read as *completely* overruling the "solicitation plus" doctrine of Shambe, Lutz and Law, then no action arising out of acts or omissions outside Pennsylvania could be maintained in Pennsylvania against a foreign, nonregistered corporation, even if it was in fact doing an *extensive* amount of business. While Pennsylvania does not have to permit such actions and could refuse to exercise jurisdiction over them, they were allowed prior to subsection C. As there is nothing in the language of that amendment indicating any change of the law in this regard, the Court cannot be so bold as to guess that there has been a change. Subsection C only expands "doing business" in certain cases; it certainly does not curtail jurisdiction in the other cases to which the rule of "solicitation plus" must still be applied.

Neither can the Court accept the theory that although subsection C directly applies only to cases under Section 2852–1011, the broad statement of the definition therein is indicative of a legislative policy that the "solicitation plus" rule should also be applied more broadly. The "solicitation plus" rule is not a mere "policy"; rather it is an unusually definite rule of law set out quite clearly by the Pennsylvania Supreme Court in Shambe. Had the Legislature intended such a sweeping revision, it could quite easily have done so.

Alitalia is a commercial airline organized under the laws of the Republic of Italy. It has no aircraft located in Pennsylvania and operates no regularly scheduled flights into or out of the State, but has flown five charter flights out of Philadelphia in the last three years and will fly more if business demands. On at least one occasion, an Alitalia jet has landed at Philadelphia's International Airport when the weather in New York was inclement. The closest regular terminus of defendant is New York International Airport where an average of three flights arrive and leave each day.

Two offices, employing eleven persons, are operated in Philadelphia at 1704 and 1801 Pennsylvania Boulevard. Both offices and the employees are supervised by the District Sales Manager whose jurisdiction extends over defendant's operations in central and southern New Jersey, Delaware and Pennsylvania, east of and including Altoona. No property is owned in Pennsylvania other than office furniture and supplies. Defendant describes its Pennsylvania operations as the solicitation of passengers and cargo traffic and the dissemination of information to prospective passengers and shippers.

A passenger desiring to travel on an Alitalia flight can purchase a ticket and secure a reservation at one of defendant's Philadelphia offices. However, defendant's employee in Philadelphia must first obtain a confirmation of the reservation from the New York reservation department. There are also roughly 120 travel agents in Pennsylvania who are authorized to sell defendant's tickets. These agents also contact New York to secure confirmation of space. Once confirma-

tion is received, the travel agent issues the ticket, collects the money, deducts his commission, and remits the balance to the Philadelphia office. The Philadelphia office deposits all money received for tickets and freight in a depository account with a Philadelphia bank from which only the New York office can make withdrawals. In 1962 the Philadelphia office handled roughly one million dollars in collected fares and charges.

Defendant's freight operation in Philadelphia is not fully explained in the present state of the record. Alitalia has no provisions for carrying freight from any place in Pennsylvania to the New York terminal. However, the Philadelphia office is able to issue waybills and also makes arrangements with other carriers to transport freight to New York, at which point Alitalia is able to handle it.

The Court can conclude little from the sparse information before it on defendant's freight operations. However, it is quite clear that the Philadelphia office is doing more than "mere solicitation" of passenger traffic.

Defendant argues that the five charter flights that have landed in Philadelphia were contracted for in New York and were under the direction and control of the charterer. It also points out that the travel agents representing defendant are in no sense "legal" agents. But even if the Court were to agree with these contentions, Alitalia is not able to escape the consequences of the fact that it has employees in Pennsylvania who are selling tickets and thus, binding the company. The requirement that the employee confirm the availability of space with the New York reservation department before making a ticket sale does not render the employee's actions less binding. In reality, this is not the case of a representative who solicits an offer which is transmitted to an out-of-state principal for acceptance or rejection. Rather, the more correct analogy is to the salesmen who must check the stockroom supply before making a sale.

The Shambe case stated that "solicitation plus" in Pennsylvania required that: (1) The company must be present in the State; (2) by an agent; (3) duly authorized to represent it in the State; (4) the business transacted therein must be by or through such agent; (5) the business engaged in must be sufficient in quantity and quality; and (6) there must be a statute making such corporations amenable to suit. Lutz held this rule to require that the agent must have the power to bind the corporation, which power these employees do have. The facts of the Shambe case satisfied all of these requirements except number 5. The Court believes that in this case one million dollars worth of passenger and freight sales passing through the Philadelphia office is more than sufficient quantity and quality. Shambe v. Delaware & Hudson R. R. Co., supra, Convery v. Clairol, Inc., 123 F.Supp. 29 (E.D.Pa. 1954).

This case is not controlled by Vereen v. Chicago, Milwaukee, St. Paul & Pacific R. R. Co., 209 F.Supp. 919 (E.D.Pa. 1962) because in that case there was no evidence that defendant did anything more than solicit. Here, however, defendant's Philadelphia office is actually making sales. The same distinction can be drawn as to Strauss v. Delta Air Lines, Inc., supra.

█ Since Alitalia is present and doing business within Pennsylvania, it is subject to service of process. Having already been served in accord with the applicable law, it is properly before the Court.

## ORDER

And Now, to wit, this 10th day of June, 1963, for the reasons set forth above, it is Ordered, Adjudged and Decreed that the motion of defendant to dismiss the complaint and to quash service of the summons and complaint be and it is hereby Denied; the motion of plaintiff to transfer the action to the United States District Court for the Southern District of New York is likewise DENIED, no showing having been made of the necessity or advisability thereof.