Universal Film Exchanges, Inc. v. Budco, Inc.

*Robert W. Valimont, Bowen & Valimont,* for plaintiff.

*Frank N. Gallagher, Eastburn & Gray,* for defendants.

GARB, J., March 12, 1968.—This is an action in equity instituted by plaintiff, a New York corporation authorized to do business in Pennsylvania, against 21 defendant corporations. The complaint, in count one, alleges that plaintiff is a distributor of motion picture films and that from January 1, 1960, to June 8, 1966, each of defendants leased motion picture films distributed by plaintiff for exhibition at theaters owned and operated by various of the corporate defendants. It is alleged that defendant, Budco, Inc. (hereinafter referred to as Budco), pursuant to an agreement with the other corporate defendants, managed each of the aforesaid theaters for each of the other defendants and bought, booked and negotiated on behalf of each of them for the licensing of the motion picture film. It is further alleged that, under the various contracts under which the films were leased, defendants were required to submit to plaintiff daily statements of gross admissions and other information upon which statements plaintiff was to determine the film rental due. It was set forth in the contract, in addition, that plaintiff had the right to audit all of defendants' books and records at any time after the conclusion of the engagement of any film so leased. It is finally alleged in the first count, that plaintiff made demand upon defendants for an audit, pursuant to the terms of the contract, which demand was refused and, therefore, plaintiff requests an order of the court requiring defendants to submit to said audit.

In the second count of the complaint, plaintiff alleges that defendants misrepresented the box office receipts for films leased from January 1, 1960, to

June 8, 1966, that the misrepresentations were made willfully and maliciously, defendants knowing that they were false and knowing that plaintiff would rely upon them, that plaintiff did rely upon them in computing and accepting payment on film rental, that plaintiff did not become aware of "these fraudulent misrepresentations" until late in the year 1965, and as a result thereof plaintiff requests an accounting of film rentals from January 1, 1960, to June 8, 1966, and a judgment for the amount found due and owing. To this complaint, defendants have filed voluminous preliminary objections. Plaintiff has filed an answer to those preliminary objections requiring a reply, depositions have been taken, and the matter has been argued before the court en banc.

To dispose of a preliminary matter first, defendants initially complained that service on all defendants except County Theatre Co., Inc., was improper because the complaints were served upon the manager of the County Theatre on behalf of all defendants. Subsequently, plaintiff caused the complaints to be re-served in this county upon Claude J. Schlanger, who is the president or executive officer of each of defendant corporations. Defendants have not renewed their preliminary objection to this mode of service, and we therefore assume that it is abandoned.

Defendants' primary objection would seem to be that this court lacks both jurisdiction and venue over most of defendant corporations. Defendants can be classified in three separate categories for purposes of deciding the jurisdictional and venue question.[1] First of all, several of defendant corporations are, in fact, Pennsylvania corporations, concededly doing business

---

[1] Although there is no preliminary objection relating to Clifton Heights Drive-In, Inc., Mr. Schlanger testified that S & K Airport Drive-In, Inc., owns 90 percent of the stock of that corporation.

in Bucks County, which gives us both jurisdiction and venue over them.[2] Secondly, some of defendant corporations are, in fact, Pennsylvania corporations but allegedly not doing business in Bucks County.[3] As to these, defendants allege there is no venue in the courts of Bucks County. Lastly, some of the corporations are not incorporated nor authorized to do business in the Commonwealth of Pennsylvania and allegedly do not do business in Pennsylvania.[4] As to these, defendants allege there is neither jurisdiction nor venue in Bucks County.

We will direct our attention first to the objection of lack of jurisdiction. It is the contention of defendants that certain of defendant corporations are foreign corporations, not doing business in Pennsylvania, and, therefore, the courts of Pennsylvania have no jurisdiction over them in this litigation. It has long been recognized that foreign corporations are not immune from the process of local courts if they carry on business in the State in such a sense as to manifest their presence within the State: United Fruit Company v. Department of Labor and Industry, 344 Pa. 172 (1942). It was long ago decided in the bellwether case of Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240 (1927), that where a foreign corporation is doing business within the Commonwealth of Pennsylvania, this State has jurisdiction over that corporation

---

[2] Budco, Inc., S & K Airport Drive-In, Inc., Penn-Maryland Amusement, Inc., Bucks County Drive-In Theatre, Inc., Sampam Productions, Inc., County Theatre Co., Inc., H & M Enterprises, Inc., Morrisville Theatre Co. and Benaire Amusement Co.

[3] 202 Drive-In, Inc., Schlanger Theatres, Inc., Downtown Amusement Co., Cinema I Springfield, Inc., and York Drive-In, Inc.

[4] Cinema 141, Inc., Price's Corner Drive-In, Inc., Landis Theatre Co., Landis Amusement Co., E-L Theatre and Pennsauken Drive-In Theatre, Inc.

and the due process requirements of the fourteenth amendment are met. That case then declared that mere solicitation of business within the State is not sufficient to find a foreign corporation doing business here, but that there were six additional prerequisites which, together with solicitation, must be found before a foreign corporation could be found to be doing business. Primarily, Shambe v. Delaware & Hudson R. R. Company, supra, held that the court must look to the quality and quantity of the acts performed by the corporation, meaning with regard to quality, those directly furthering or essential to the corporate objects and, as regards quantity, so continuous and sufficient as to be termed general or habitual. They may not be incidental. From this decision was evolved the "solicitation plus" concept of determining jurisdiction over foreign corporations. It was held in Lutz v. Foster & Kester Co., Inc., 367 Pa. 125 (1951), that a foreign corporation is amenable to Pennsylvania jurisdiction where it does business here. Mere solicitation is not doing business for this purpose. There must be other activities in addition to solicitation. Mere acts of courtesy for foreign corporations by a local solicitor would not be sufficient. The criterion was whether local solicitors have the power to bind foreign corporations by which they were employed.[5]

By amendment to the Business Corporation Law of Pennsylvania of January 18, 1966, P. L. (1965) 1305, sec. 46, 15 PS §2011C, the legislature defined "doing business" for the purpose of determining jurisdiction

---

[5] For an excellent discussion of the evolution of the jurisdiction requirements as set forth by Shambe v. Delaware & Hudson Railroad Co., supra, see Giuliano v. Alitalia Airlines, Inc., 218 F. Supp. 78 (E. D. Pa., 1963).

of courts within this Commonwealth.[6] The addition of this amendment to the Business Corporation Law of Pennsylvania did effectively change the doctrine of "solicitation plus" of Shambe v. Delaware & Hudson Railroad Company, supra, and Lutz v. Foster & Kester Co., Inc., supra, but it did not change the basic holding of those cases that a foreign corporation doing business in Pennsylvania is amenable to Pennsylvania jurisdiction. The amendment merely defined doing business less stringently than the definition in Shambe. Thus, an entry or presence within the State by the conduct of minimal business activity within the State by a foreign corporation is sufficient to permit Pennsylvania to exercise jurisdiction over that foreign corporation: Botwinick v. Credit Exchange, Inc., 419 Pa. 65 (1965). These standards are applicable to the case at bar inasmuch as this amendment had been enacted on the date of institution of this suit: Frisch v. Alexson Equipment Corporation, 423 Pa. 247 (1966).

It is clear that all defendants are doing business within Pennsylvania as that term is defined. The deposition of the president or executive officer of each of the corporations revealed the following facts:

Defendant, Budco, admittedly a Pennsylvania corporation doing business in Bucks County, does not own or operate any theaters. All the other exhibitors own or operate theaters, some in Bucks County and some not, and not all in Pennsylvania. Budco buys and books the films for all the exhibitors. Since August

---

[6] "For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business' ".

10, 1965, all communications from distributors of films relating to the theaters named in the complaint were sent to the Doylestown office of Budco. Almost all correspondence from Claude J. Schlanger, president or executive officer of all the corporations, to the distributors relating to all of defendants' theaters came from his office in Doylestown or from the Budco office in Doylestown. Schlanger and one Pat Beck, an employe of Budco, were authorized to sign for the licensing of all films on behalf of all the theaters as Budco's negotiating representatives for the theaters. Schlanger was likewise authorized to sign checks on behalf of all defendant corporations. All box office receipts were signed by each individual theater manager and Beck. The said box office receipts were sent from each individual theater to the Budco office in Doylestown daily. Each individual theater and each corporation kept its checkbook in the Doylestown offices. Each exhibitor's copy of the contract with the distributor was kept in the Doylestown office. Each corporation kept its books and ledgers in the Doylestown office. All theater "playoff" records and cancelled checks were kept in the Doylestown office. Many of the records relating to the acquisition of equipment, receipts, projectors, screens, etc., for all the theaters are maintained in Doylestown, although some of such records are also maintained at the individual theaters. Some of the minute books of the corporations were kept at the Doylestown office and some at Schlanger's attorney's office in Philadelphia. All of the payroll records of all of the corporations were kept by Budco in the Doylestown office. None of the corporations pays any rent for the use of the premises in Doylestown. Some negotiations for availabilities of theaters for films for the corporations take place in Doylestown and sometimes on the phone from Doylestown. All records and copies of advertising for all the theaters are daily forwarded to, and kept in, the

Doylestown office. All bills are approved at each individual theater and then sent to the Budco office in Doylestown to the auditor who is paid by Budco. Some of the corporations pay this auditor directly as well. The auditor makes a profit and loss statement for Schlanger so that he can watch each of these companies. It is obvious that all of the business of all of these corporations, with the exception of the actual sale of tickets and exhibition of the film, is conducted either in the office of Budco or Schlanger's own office at his home in Doylestown. In all cases, the business is conducted by Schlanger on behalf of all corporations as the president or executive officer of each.[7]

We agree that a foreign corporation cannot be made amenable to Pennsylvania jurisdiction through a subsidiary doing business within the Commonwealth: Botwinick v. Credit Exchange, Inc., supra. However, there is nothing in this record to indicate that any of these corporations are in any way subsidiary to any others but rather that they are separate corporations with the same executive officer and similar stockholders and directors. Admittedly, Budco, also with the same executive officer and similar directors and stockholders, apparently performs some services for some of the other corporations.

We likewise agree that foreign corporations are not made amenable to Pennsylvania jurisdiction through an independent contractor authorized to and doing business in the Commonwealth of Pennsylvania: Miller v. Kiamesha-Concord, Inc., 420 Pa. 604 (1966). However, there is nothing in this record to indicate that Budco is an independent contractor of any of these corporations aside from the bald

---

[7] It should be noted that, with the possible exception of Downtown Amusement Co., Schlanger is likewise a director and shareholder of all of these corporations and, in most cases, the other shareholders and directors are either members of his family or his attorney.

assertion of same. At the depositions, request was made for the contract between Budco and the various other defendants defining their relationship, which contracts were never produced by defendant. Thus, the record is barren of any facts from which we can possibly conclude that Budco, in fact, enjoys the status of independent contractor. On the contrary, we find that each of these corporations, through the concomitance of all the various activities in which they engage in Pennsylvania, is, in fact, doing business in the Commonwealth of Pennsylvania as that term was defined by the Business Corporation Law, although Budco may have discharged some of these functions as an agent for these corporations with the power to bind its principal. See Giuliano v. Alitalia Airlines, Inc., supra.[8]

The question of venue is a good deal less troublesome. It may be that Pennsylvania Rule of Civil Procedure 1503 is a sufficient answer to defendants' contention.[9] Admittedly, several of defendants are doing

[8] Frisch v. Alexson Equipment Corporation, supra, does not derogate from this conclusion. In this case, it was decided that there was no jurisdiction where service was made by use of the substituted service provisions of the Rules of Civil Procedure. The case held that the foreign corporation did do business in Pennsylvania but that, in view of the fact that the cause of action did not arise here, substituted service was improper. In our case, service was made under Pennsylvania Rule of Civil Procedure 2180(1) upon Schlanger as the executive officer of each corporation. Therefore, the only question in our case is whether each corporation was doing business, and we are not confronted with the question of the propriety of service.

[9] "Rule 1503. Venue.

"(a) Except as otherwise provided by an Act of Assembly, Rule of the Supreme Court or by subdivision (b), (c) or (d), an action may be brought in and only in a county in which

"(1) the defendant or a principal defendant may be served, or

"(2) the property or a part of the property which is the subject matter of the action is located,

but a judgment, order or decree shall not bind a defendant personally unless he is served within the county, . . ."

704

business in Bucks County and, therefore, by virtue of the service upon Schlanger as their executive officer, venue would attach under subparagraph (1). Additionally, venue may very well attach by virtue of subparagraph (2), inasmuch as the books and records requested to be audited are kept and maintained in Bucks County. The judgment, order or decree of the court can bind all of defendants inasmuch as service was made on all of them by service upon Schlanger as an executive officer of each defendant corporation under Pennsylvania Rule of Civil Procedure 2180(a) (1).[10]

We are convinced that venue lies in Bucks County as well under Pa. R. C. P. 2179[11]. The prerequisites to doing business for this purpose are not dissimilar to those for the purpose of finding jurisdiction: Botwinick v. Credit Exchange, Inc., supra. When venue in a particular county depends upon whether a corporation regularly conducts business in that county, the business engaged in must be sufficient in quantity and quality. The quality of the acts must be those furthering or essential to corporate objects and does not in-

[10] "Rule 2180. Service of Process.

"(a) Service of process within the county in which the action is instituted shall be made upon a corporation or similar entity by the sheriff of that county by handing a copy thereof, attested by the prothonotary or sheriff or certified by the plaintiff to be a true copy,

"(1) to an executive officer, partner or trustee of the corporation or similar entity . . ."

[11] "Rule 2179. Venue.

"(a) Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in

". . .

"(2) a county where it regularly conducts business.

"(3) the county where the cause of action arose; or

"(4) a county where a transaction or occurrence [sic] took place out of which the cause of action arose".

clude incidental acts. The quantity of the acts means those which are so continuous and sufficient as to be termed general or habitual. A single act is not enough. It is not required that the scale of business in the particular county be a major portion of the corporation's business. The question is whether they are regular and not whether or not they are principal: Monaco v. Montgomery Cab Company, 417 Pa. 135 (1965); Canter v. American Honda Motor Corporation, 426 Pa. 38 (1967). We find that all of defendant corporations regularly conduct business in Bucks County.

It is likewise clear that the cause of action arose in this county inasmuch as the contracts were made here, the books and records to be audited are maintained here, the demand and refusal for audit was made here, the contested box office receipts were submitted from here. To say the least, a transaction or occurrence out of which the cause of action arose took place here. For all of the foregoing reasons, there is venue in this court by virtue of Pa. R. C. P. 2179 (a) (2), (3) and (4).

Assuming that jurisdiction is found in this court, defendants then demur to the complaint on various grounds. Defendants first state that plaintiff has an adequate remedy at law inasmuch as it may get an accounting under Rule 1021 of the Rules of Civil Procedure.[12] Even under this rule there is concurrent jurisdiction in law and in equity in an action for an accounting: Donatelli v. Carino, 384 Pa. 582 (1956).

As part of the demurrer, defendants next allege that plaintiff, in fact, makes demand only for money damages, which is cognizable only on the law side of the court and not in equity. However, the bill does

---

[12] "Rule 1021. Claim for Relief.

"Any pleading demanding relief shall specify the relief to which the party deems himself entitled. Relief in the alternative or of several different types, *including an accounting*, may be demanded". (Italics supplied.)

not make claim for definite sums of money but does make definite allegations of fraud and prays for an accounting, discovery and other relief. As such, the demand for relief is cognizable in a court of equity: Komenarsky v. Brode, 307 Pa. 156 (1932).

In conjunction with the previous two arguments, defendants claim that plaintiff has an adequate remedy at law because it has asked only for a unilateral accounting and that it is not complicated. It is true that while matters requiring an accounting may be determined at law, the remedy is not exclusive but concurrent with equity. The mere fact that a remedy at law exists is not sufficient to oust equitable jurisdiction. The question is whether the remedy is adequate or complete.

The instances in which the legal remedies are held to be inadequate and, therefore, a suit in equity for an accounting proper, are: (1) Where there are mutual accounts between the parties; (2) where the accounts are all on one side but there are circumstances of great complication or difficulties in the way of adequate relief at law; and (3) where a fiduciary relationship exists between the parties and a duty rests upon defendant to render an account.

Equitable relief will not ordinarily be granted where the account is all on one side. But equity will take jurisdiction notwithstanding the accounting is on one side where it is complicated. It must appear that the complications or difficulties in the way are such that adequate relief at law cannot be given. No satisfactory test can be laid down to determine when an account is sufficiently complicated to enable equity to take hold. An account must be so involved that the court would be incompetent to examine it with necessary accuracy. Each case must be decided under its own peculiar facts. Equity will entertain jurisdiction where it is doubtful whether adequate relief can be had at law.

Where the accounts are all on one side, but a discovery is necessary, there is a proper basis for equitable jurisdiction. A legitimate function of discovery is to furnish evidence; it is not the source of jurisdiction. Discovery cannot extend equitable jurisdiction to causes otherwise cognizable solely at law. Where equitable jurisdiction exists, discovery may be an aid to its exercise: Williams v. Finlaw, Mueller & Co., Inc., 292 Pa. 244 (1928); Stuyvesant Insurance Co. v. Keystate Insurance Agency, Inc., 420 Pa. 578 (1966); Stauffer v. Hollerbush, 72 York 42 (1958).

The standards propounded by these cases for equitable jurisdiction are well met in this case. Limiting our examination to the complaint only, as we must for consideration of this demurrer (Bonanni v. Weston Hauling, Inc., 392 Pa. 248 (1958)), and affording plaintiff all reasonable inferences from the facts of the complaint, which we assume to be true for this purpose (Eden Roc Country Club v. Mullhauser, 416 Pa. 61 (1964)), sufficient facts are pleaded to convince us that, although the accounting sought is unilateral, it is sufficiently complicated to invoke equitable jurisdiction. The complaint alleges that the accounting sought is from the period of January 1, 1960, to June 8, 1966, a period of six and one-half years. The complaint is concerned with 28 separate and distinct theaters operated by the 20 defendants, exclusive of defendant Budco. The inference we draw from the complaint is that each engagement for each film at each theater involved a separate contract for which there should be a separate accounting. The complaint has an exhibit appended thereto containing 23 pages of accountants' columnar paper, each almost entirely filled with the names of separate film titles, one to a line, indicating separate, different play dates, the contracting party, the contract application date and the contract approval date. Without computing the exact

number, it is obvious that there are at least hundreds of separate contracts and; therefore, accountings, which must be audited. The job of auditing this tremendous number of contracts and accountings therewith would be taxing for a computer and virtually impossible for a court of law sitting with or without a jury. As such, if plaintiff is, in fact, entitled to an accounting, the accounting is obviously of such difficulty as to invoke equitable jurisdiction.

Secondly, this matter is appropriately brought in a court of equity, because plaintiff alleges fraud on the part of defendants. Equity has jurisdiction in relief of fraud and that is so whether or not the remedy in equity is more efficacious or adequate than an action at law. An allegation of fraud, coupled with a prayer of appropriate equitable relief, is sufficient to invoke equitable jurisdiction: The Maccabees v. Cappas, 164 Pa. Superior Ct. 317 (1949); Zoni v. Importers and Exporters Insurance Co. of New York, 338 Pa. 165 (1940); Plumer v. Flynn et al., 86 D. & C. 47 (1953). As a general rule, courts of equity have jurisdiction to relieve against every species of fraud: Tibbens v. Burrell, 46 Pa. Superior Ct. 466 (1911); Clauer v. Clauer, 22 Pa. Superior Ct. 395 (1903). The cognizance of every case of fraud belongs in the court of chancery even though there may be a complete remedy at law. The jurisdiction is concurrent: Wagner v. Fehr, 211 Pa. 435 (1905). As previously stated, where a bill in equity makes definite allegations of fraud and prays for an accounting, discovery and other relief, equitable jurisdiction is appropriate: Komenarsky v. Brode, supra.

Plaintiff has adequately and sufficiently pleaded allegations of fraud. We recognize that where a party seeks relief on the ground of fraud, the pleading must set forth the essential facts of the alleged fraud. The bald averment of fraud without more is a mere legal

conclusion which does not justify the granting of relief, unless the pleadings clearly set forth the specific facts supporting such conclusion: Shinn v. Stemler, 163 Pa. Superior Ct. 363 (1948); Chambers v. Beaver-Advance Corp., 392 Pa. 481 (1958). The complaint alleges that plaintiff entered into written contracts with the various defendants, or with Budco on behalf of defendants, for the leasing of the various films as set forth in exhibit A to the complaint. The complaint further states that defendants agreed to pay to plaintiff as film rental a percentage of the gross admission receipts from such exhibitions. Defendants were required to submit to plaintiff daily statements of gross admissions, and plaintiff reserved the right to audit the books and records of defendant corporations. Plaintiff has been denied its right to audit the said books and records of defendant corporations. Plaintiff further pleads that it believes that many of the representations of defendants in their box office statements for the period in question were, in fact, false and incorrect, but that plaintiff relied on these statements. It is alleged that the false statements were made willfully and maliciously, the same known to be false by defendants and were submitted to plaintiff with knowledge that plaintiff would rely upon them. As a result of the foregoing false statements, plaintiff was not compensated the proper sums or amounts to which it was entitled for the rental of its film. We are of the opinion that the complaint states sufficient facts which, accepted as true for purposes of the demurrer, and together with the inferences which fairly arise therefrom, are sufficient allegations of fraud. Defendants are adequately advised of the basis of the action against them and that which they will be required to deny or explain. To require pleading more would be to require the pleading of evidence: Universal Film Exchanges, Inc. v. Hirsh, 21 D. & C. 2d 154 (1960).

For all of the foregoing reasons, defendants' demurrer is denied.

Next in line of defendants' multifarious preliminary objections is the preliminary objection of multifariousness. Defendants claim that, if there is, in fact, jurisdiction and venue in this court, and if plaintiff's cause of action is well pleaded, in any event there has been a misjoinder of defendants and causes of action. In short, their objection is that the action is bad for multifariousness. The question of multifariousness is within the sound discretion of the court: Zoni v. Importers and Exporters Insurance Company of New York, supra. We are satisfied that the causes of action and defendants were properly joined in this one action. Pa. R. C. P. 1508 provides that plaintiff may state in his complaint two or more causes of action cognizable in equity. Pa. R. C. P. 2229 (b) has to do with joinder of parties defendant[13]. Where distinct and independent causes of action are joined in one bill, or several parties not connected with the controversy in its legitimate scope are joined, a bill in equity is multifarious. But if the court in its discretion believes that the joinder in one suit of different matters or parties will promote the convenient administration of justice, the bill will be sustained: Komenarsky v. Brode, supra.

No bill is multifarious that presents a common point in litigation. The parties must be material and attach to, or be connected with, the liability and each other in

---

[13] "Rule 2229. Permissive Joinder.

"(a) . . .

"(b) A plaintiff may join as defendants persons against whom he asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons will arise in the action".

some manner: Komenarsky v. Brode, supra. Whether a bill in equity contains too many subjects, or subjects too different from each other to be litigated in one proceeding is a matter of convenience to be determined in each case under all the circumstances: Pittsburgh v. Pittsburgh Railways Co., 234 Pa. 193 (1912). The joinder of two or more causes of action cognizable in equity against two or more defendants is permissible under our rules, provided, however, that the causes of action arise from the same transaction, occurrence or series of transactions or occurrences, and a common question of law or fact affecting the rights or liabilities of all the parties exist. The ultimate determination is within the sound discretion of the trial court: Falsetti v. Local Union No. 2026, United Mine Workers of America, 400 Pa. 145 (1960). Thus, it is clear that rules 1508 and 2229 are read together when an attack of multifariousness is made where there is more than one cause of action and more than one defendant. Certainly, the cause of action in this case arises from the same series of transactions or occurrences inasmuch as the entire controversy arises out of an audit or accounting of receipts flowing from the rental contracts of the various films. The contracts are apparently all the same. The legal questions involved in determining whether or not plaintiff is entitled to an audit and, if so, the damages to which he is entitled are common to all cases. Parties defendant are inextricably interwoven through common management, directors and shareholders. Plaintiff is the same in all cases. The legal issues remain the same. To require separate suits against each defendant or on each contract would require a multitude of litigation causing great inconvenience not only to the parties but to the courts. The attack of multifariousness must fail, and we overrule and deny this preliminary objection.

Defendants' motion for a more specific pleading is frivolous at best. To require plaintiff to append copies of every contract and every statement of receipts for every film would be a requirement of hundreds of exhibits to the complaint. Defendants are not prejudiced by plaintiff's failure to do so, because it must be assumed that they have either the original or copies of the contracts. Each contract or license is really only evidence of the allegedly fraudulent acts of defendants and not necessarily the basis of the allegation of fraud. As previously stated, plaintiff has made adequate allegations of fraud. If defendants require additional information, the processes of discovery are available to them. As such, the motion for more specific pleading is denied: Universal Film Exchanges, Inc. v. Hirsh, supra.

Defendants' contention that the complaint should be stricken for the failure of plaintiff to attach a verification in conformity with rule 1024 (a) is without merit and will be dismissed. We do not read Hendleman v. Hayman, 11 Bucks 228 (1961), to mean that a complaint would be stricken on a verification in the form as set forth in this case[14]. As Judge Fullam in that opinion indicated, while this form of verification may not literally comply with the requirements of rule 1024 (a), there is authority for the proposition that this form of verification is sufficient: Lyme v. Olewine, Sr., 3 D. & C. 2d 112 (1955). See also Deibler v. Thrift Drug Co. of Pennsylvania, 34 D. & C. 2d 209 (1964).

---

[14] The verification as used reads as follows: "Bernard N. Golden, being duly sworn according to law, deposes and says that he is Philadelphia Branch Manager of Universal Film Exchanges, Inc., plaintiff in the above captioned action; that as such he is authorized to make this affidavit, and that the facts set forth in the foregoing complaint are true and correct to the best of his knowledge, information and belief".

Defendants' motion to strike various paragraphs of the complaint on grounds of scandalous or impertinent matter must likewise be dismissed and discharged. The allegedly objectionable paragraphs form an integral part of plaintiff's allegations of fraud and, in fact, constitute the gravamen of that assertion. While defendants may find them distasteful, that certainly does not distinguish them from any other allegations of fraud. Scandalous matter is matter which consists of any unnecessary allegation which bears cruelly on the moral character of an individual or states anything which is contrary to good manners, or anything which is unbecoming to the dignity of the court to hear, or which charges some person with a crime, not necessary to be shown in the cause. An allegation is impertinent when it is irrelevant to the material issue made or tendered: Schwingen v. Piekarski, 13 D. & C. 2d 617 (1957). The matters pleaded in this complaint are neither scandalous nor impertinent. Certainly, the allegations of fraud are necessary if plaintiff's cause of action is to be made out. As such, they are certainly not scandalous and, in view of the relevancy, are not impertinent.

For the foregoing reasons, we are satisfied that all of defendants' preliminary objections are without merit and must be dismissed. Accordingly, we enter the following:

ORDER

And now, March 12, 1968, defendants' preliminary objections are overruled and dismissed, with leave granted defendants to file answers or other pleadings within 20 days of the date of this order.