Jack R. KELLY, Plaintiff,

v.

UNITED STATES STEEL CORPORA-TION and The Thew Shovel Company, a corporation, Defendant.

Homer L. JOHNSTON, Plaintiff,

v.

UNITED STATES STEEL CORPORA-TION and Thew Shovel Company, a corporation, Defendant.

Civ. A. Nos. 17251, 17795.

United States District Court
W. D. Pennsylvania.

March 11, 1960.

Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiffs.

Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for The Thew Shovel Co.

Pringle, Bredin & Martin, Pittsburgh, Pa., for Allied Chemical Coke Corp., Wilputte Coke Oven Div.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for United States Steel Corp.

Stein & Winters, Pittsburgh, Pa., for Macwhyte Co.

WILLSON, District Judge.

In these two civil actions defendant, The Thew Shovel Company, a corporation, has filed motions to dismiss. In each case, plaintiffs are citizens of Pennsylvania. The co-defendant, United States Steel Corporation has heretofore been dismissed as a defendant because of lack of diversity, this court having held that it, though a New Jersey Corporation, has its principal place of business within Pennsylvania. Admittedly, The Thew Shovel Company is a corporation organized and existing under the laws of Ohio with its principal place of business in the City of Lorain, Ohio. Plaintiff asserts that there is venue in this district because Thew does business within the Commonwealth of Pennsylvania within the meaning of section 1011, subsection C of the Business Corporation Law of Pennsylvania as re-enacted November 10, 1959, 15 P.S. 2852–1011.

Plaintiffs have made several attempts to serve process upon defendant Thew in these cases. The initial service was made upon Thew on August 23, 1958 by serving the Atlas Equipment Corporation, alleged to be the agent of Thew in Western Pennsylvania. This service was held improper in an opinion by Judge McIlvaine filed January 28, 1959, D.C., 170 F.Supp. 649. Thereafter, counsel for plaintiff secured an Order of Court for leave to serve the Secretary of the Commonwealth of Pennsylvania as a statutory agent of the defendant and this service was accomplished February 5, 1959. Defendant's motion is first pointed to the issue that such service on the defendant is improper because it claims that Thew does not do business in Pennsylvania. It is noticed in this connection that the venue statute, 28 U.S.C.A. § 1391, in diversity cases, provides that a corporation may be sued in any judicial district in which it is doing business. The point is that if Thew is doing business in this district, then venue is properly laid by plaintiff in this district.

By stipulation, and since the argument on the motions, defendant has again been served under the provisions of section 1011, subd. C of the Business Corporation Law of Pennsylvania by service of process upon the Secretary of the Commonwealth. It is to be noticed that that section was added to the business corporation law in 1951 but was omitted in the 1957 revisions of that statute. It was then re-enacted on November 10, 1959. The present motion, by stipulation of counsel, applies to the section as re-enacted, as plaintiff has, by Court Order, been permitted to serve the Secretary of the Commonwealth. It is to be noticed that this court's jurisdiction over a foreign corporation may be secured by service of the federal process as permitted under Federal Rule 4(d) (7), 28 U.S.C.A., providing jurisdiction over the same corporation could be secured by a state court under a state statute. The issue boils down then to whether defendant is doing business in Pennsylvania within the purview of the corporate law of the state. If so, service is proper. If not, the motion should be granted.

Defendant, an Ohio Corporation, is not registered to do business in Pennsylvania. It has no office as such here. Defendant is a manufacturer of power shovels, draglines and other heavy equipment. It does business nationwide but by the means of exclusive distributorships and under written agreements. In the contract between Thew and the Atlas Equipment Corporation, a provision specifically states that the distributor is not constituted an agent of Thew and nothing it does under the contract shall be represented or construed as constituting the

distributor the agent of the manufacturer. In its method of doing business, the distributor must and does buy its products outright from Thew. It resells to its customers. In this district, the Atlas contract is similar to contracts used by Thew all over the United States. Orders for purchase of Thew products by Atlas or any other distributor are accepted in Ohio. During the course of the pendency of these actions, the agreement between Thew and Atlas Equipment Corporation was terminated and another distributor was substituted for Thew products in this district. It is conceded in these cases, that there are no offices in Pennsylvania which show the name of Thew on the building directory or doors, nor does it own or lease any warehouses, nor storage or delivery sites in this state. Neither does it maintain any bank accounts in Pennsylvania nor hold directors meetings in this state. It does not conduct any manufacturing operations in Pennsylvania through any subsidiary nor does it maintain any service company in Pennsylvania.

The foregoing might be termed negative factors which tend to show that Thew does not do business in Pennsylvania. That contention is strongly urged by defendant. Its counsel points to the most recent decision of the Supreme Court of Pennsylvania, Swavely v. Vandegrift, 397 Pa. 281, 154 A.2d 779, decided October 21, 1959. In some respects the facts reviewed in the cited case are similar to the factual situation in the instant case, but it seems to this court upon review of the facts before me that the factual situation is more like that contained in the decision of Florio v. Powder Power Tool Corp., 248 F.2d 367, 372, a decision of the Court of Appeals of this circuit. In speaking of the written contract before him, Judge Biggs said, "These territorial contracts were rigidly restrictive in nature." The same terminology can be applied to the contract between Thew and Atlas. The agreement carefully defined the territory in which Atlas could sell defendant's products. Part of this territory was Western Pennsylvania. One paragraph of the contract was styled, "*Section 5. Distributor Organization and Plant.*" Under that heading the language in the contract was:

"The distributor shall, to the satisfaction of the manufacturer, maintain within his territory a stock of the products covered hereby, and an organization and facilities for the solicitation of business, and the storage, installation and servicing of such products."

The contract set forth Thew's warranty running to the customers of Atlas, that is, purchasers of Thew products, but Atlas was the only organization in Pennsylvania through which Thew could fulfill its warranty. The distributor contract provided that either party could terminate it at any time upon written notice to the other. On termination, the contract provided that Thew could require the return of the products purchased by Atlas at the prices originally paid by Atlas but it also provided that Thew could declare some items nonreturnable.

It is noticed that the statute says the "entry of any corporation * * * for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit * * * ", is doing business. In sections nineteen and twenty of the contract, Thew required Atlas to report to it the names and addresses of customers for each machine sold or leased, and also Atlas was to report " * * * such installation and follow up service data as may reasonably be required". Thew also required Atlas to report at reasonably specified times, Atlas' inventory on hand and statements showing Atlas' financial condition.

From the depositions of Mr. Reinhold, the President of Atlas and Mr. Clark, Secretary-Treasurer of Thew, the practice and method of the sale and distribution of the Thew products in Pennsylvania was substantially as follows. Atlas maintained a sales personnel of its own but Thew sales personnel were ready to assist Atlas men at all times in selling

and closing transactions in Pennsylvania. Thew had some fifteen expert mechanics who were available, one of whom lived in Pennsylvania for the service of Thew products sold by Atlas in its territory. The officers of Thew, to promote good will and keep the distributor interested in selling Thew products, visited Pennsylvania from time to time. They called on Atlas but also on customers and other persons interested in purchasing Thew products. A Thew district salesman was specifically assigned to Atlas and he came into Western Pennsylvania two or three times a month. His duty was to help Atlas salesmen and to supplement and augment Atlas' efforts to get orders. Thew advertised its products in trade journals which circulated in Atlas' territory in Pennsylvania. For some twenty-three years a listing of the Thew name appeared in the Pittsburgh Telephone Directory with the address listed as the same place of business as the Atlas place of business.

It is to be noticed that while this matter was pending in this court, the Atlas contract with Thew was terminated. This occurred on March 31, 1959. As provided in the contract, Thew received back from Atlas, equipment and parts valued approximately at over $200,000. This property was however turned over by Thew to its new distributor, Parkway Machinery, Inc., which as this court understands, signed a similar distributor contract to the one existing between Atlas and Thew. It appears from the answers to the interrogatories made by Thew that for a period from March 9, 1959 until some time in June of 1959, Thew owned within Pennsylvania, the machinery and parts taken back from Atlas and which it then turned over to its new distributor.

■■■ In summarizing the facts, it is apparent that the expensive and heavy equipment manufactured by Thew and sold by Atlas as its distributor in Pennsylvania, was the subject of continuous interest and supervision by Thew. It provided salesmen to assist its distributor in making a sale. It insisted on knowing who the purchasers of its equipment were, and was interested and did see that they received service on the machinery bought. The officers of the corporation themselves came into Pennsylvania to promote business. Though they came at irregular times, they regularly came. Thew salesmen and mechanics regularly came into Pennsylvania to promote the business of Thew. The activities of these men certainly bring the corporation squarely within the language of the statute, that is, " * * * for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit * * *." Further, it seems to this court that advertising its products in Pennsylvania, under the circumstances, should be considered as an "entry" within the meaning of section 1011, subd. C of the state statute.

Upon the facts before me as gleaned from the depositions and answers to the interrogatories, this court has no hesitancy in finding that defendant, Thew Shovel Company, was and is doing business in Pennsylvania. It may very well be that under the concept of doing business, as that term was interpreted prior to the enactment of the 1951 statute, Thew would be considered not amenable to suit in Pennsylvania but the 1951 statute as re-enacted on November 10, 1959, was interpreted by Judge Biggs in the Florio decision. The instant cases present a factual situation, certainly as strongly in favor of the present day doing business concept as did the facts in the Florio decision. The re-enacted statute applies to the instant motion because service has been obtained under it. As the court understands it, Thew's method and practices have not been altered or changed since the re-enactment of section 1011, subd. C. The motion will be denied.