Miller *v.* Kiamesha-Concord, Inc., Appellant.
Doline *v.* Concord, Appellant.

Argued November 9, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Stanley F. Mankas,* with him *Bellwoar, Rich & Mankas,* for appellants.

*Jay Meyers,* with him *Paul M. Goldstein,* for appellees.

*Malvin L. Skaroff,* with him *Skaroff and Skaroff,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 22, 1966::

In June of 1962 and May of 1963, Mary Miller and Mary Doline were, respectively, guests at the resort hotel operated by appellant at Kiamesha Lake, New York. Each suffered personal injuries allegedly resulting from the negligence of appellant, and each filed an action of trespass seeking damages for the injuries suffered, with Louis Doline joining in his wife's action to recover his damages.

In each case, suit was commenced by the filing of a complaint and service thereof by the Sheriff on one Lillian Sternman at her residence, 6243 N. 12th Street, Philadelphia, Pennsylvania. Such service was made under Rule 2180 of the Pennsylvania Rules of Civil Procedure, apparently based on the fact that Lillian Sternman's residence was an office or place of business of appellant and that Lillian Sternman was at that time appellant's agent or person in charge of the office,

or that she was an agent authorized by appointment to receive service of process.*

In each case, appellant filed preliminary objections, raising a question of jurisdiction, averring that service was made on a person not authorized to accept service on its behalf; that it maintains no office in the Commonwealth of Pennsylvania; and that it is a New York Corporation not doing business in the Commonwealth of Pennsylvania.

The preliminary objections were heard together by the court below and overruled. These appeals followed.

Appellant is a business corporation organized under the laws of the State of New York and is not registered as a foreign corporation doing business in the Commonwealth of Pennsylvania. Appellant's business consists solely of operating a hotel and resort facility situate at Kiamesha Lake, New York. Lillian Sternman, living at 6243 N. 12th Street, Philadelphia, Pennsylvania, has been serving the appellant in the form of, as she puts it, a "missionary method" with various travel agencies, attempting to create good will and familiarize them with the facilities available, to encourage them to recommend appellant's hotel to their clients, and in accepting reservations, herself, for appellant's hotel. Mrs. Sternman has always operated out of her home, which is owned jointly with her husband. The appellant owns no part of the property, has no furniture there, pays no rent, nor does it have its name listed or shown on any part of the property. Approximately 5 years ago, Mrs. Sternman arranged with the Bell Telephone Company to list appellant's name in both the yellow, or classified pages, and the white pages, of the Philadelphia Telephone Directory, above

---

* Since Mrs. Sternman is concededly not "an executive officer, partner, or trustee of the corporation or similar entity", the service must have been made in attempted compliance with the provisions of Rule 2180 (a) (2) and/or (3).

her home address. She alone pays for this service. Appellant does supply Mrs. Sternman with various supplies in the form of envelopes, request forms for reservations on which its New York address is printed and on which Mrs. Sternman has a printer add her name and home address, and various types of advertising literature which Mrs. Sternman distributes to various travel agencies and prospective guests.

Mrs. Sternman, upon receiving an application for a reservation at appellant's hotel, has no authority to accept or reject the reservation, but must send the application to appellant's reservation department at Kiamesha Lake, New York. Appellant then confirms or rejects the reservation and, in some cases, notifies Mrs. Sternman with a duplicate copy of a letter, the original of which is sent to the persons requesting the reservation. She is paid solely on a commission basis and has a drawing account against her commissions. She considers herself self-employed and pays her own Federal Social Security taxes. The appellant does not withhold any part of her commission earned for Federal income tax purposes. She holds a mercantile license from the City of Philadelphia which is issued in her own name. Lillian Sternman owns none of appellant's stock, nor is she an officer or director of the corporation. She is paid commissions on the basis of approximately $200,000 worth of business which she does per year.

Appellant holds no meetings in Pennsylvania, nor does it advise or direct in any way Mrs. Sternman's method of work. Appellant accepts reservations through other travel agencies independent of any effort on Mrs. Sternman's part, although she does receive a so-called "over-ride" on commissions paid to these various travel agencies in the Philadelphia area.

Appellant contends that, traditionally, we have held that the mere solicitation of business does not consti-

tute the doing of business in this Commonwealth. *Shambe v. Delaware & Hudson R. R. Co.,* 288 Pa. 240, 135 A. 755 (1927). In *Lutz v. Foster & Kester Co., Inc.,* 367 Pa. 125, 79 A. 2d 222 (1951), we held that each case must be judged on its own particular facts, and if there is solicitation plus other significant activities, then the corporation may be held to be doing business in this Commonwealth. We said in that case that other activities ". . . do not consist of acts of courtesy performed by business solicitors without compulsion, in order to satisfy or accommodate customers. Nor do they reside in the number of solicitors employed or the character and extent of the facilities provided them for carrying on their solicitations . . . The criterion is, rather, whether the local solicitors have authority to bind the foreign corporation by which they are employed."

Following the decision in the *Lutz* case, supra, the Legislature amended the Pennsylvania Business Corporation Law, 15 P.S. §2852-1011, with the addition of Subsection C, which was a much expanded definition of doing business. The amendment was limited in its application to causes of action arising out of acts or omissions of the corporation within the Commonwealth; and to that limited extent overruled the *Lutz* case. In *Rufo v. The Bastian-Blessing Company,* 405 Pa. 12, 21, 173 A. 2d 123 (1961), we said: "There can be no doubt that the legislature, by its enactment of §§1011B and 1011C, intended to extend and enlarge the amenability to suit of a foreign corporation carrying on activities within the Commonwealth and to abolish the 'solicitation plus' doctrine previously enunciated by this Court in Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 135 A. 755; Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 79 A. 2d 222. Cf: Swavely v. Vandegrift, supra. It, however, by no means follows that the legislature intended to make foreign corporations suable with-

out limitation. The very language of section 1011B contra indicates such intent.

"Due process does not require that the cause of action against a foreign corporation must arise out of the corporation's activities in the state where the action is brought: Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 446-447. It is clear that the Pennsylvania legislature did not choose to exercise the full extent of jurisdiction conferred upon it and did not make foreign corporations suable as extensively as it could constitutionally have done. Through the medium of §1011B, the legislature has validated service upon a non-registered foreign corporation by service upon the Secretary of the Commonwealth only in a restricted area, i.e., where the action arose out of acts or omissions of the corporation within the Commonwealth *and* where a corporation has 'done business' in Pennsylvania within the meaning of §1011C." (Emphasis in original).

The original subsection C was enacted in 1951 and was repealed in 1957. It was re-enacted in 1959 and reads as follows: "C. For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'." 15 P.S. §2851-1011, sub. C (supp. 1962). By its very definition, subsection C is limited by "For the purpose of this section . . ." to §2852-1011 of the Business Corporation Law. Subsection A is concerned only with registered foreign corporations; Subsection B is concerned only with foreign corporations which are not registered with the Secretary of the Commonwealth, where the cause of action arises out of acts or omissions of the corporation within the Common-

wealth. It is undisputed that appellant is not registered to do business in the Commonwealth and that the acts or omissions of appellant, which gave rise to these actions, took place outside the Commonwealth. Therefore, by its very definition, subsection C is not applicable in the instant case.

It must be noted, however, that subsection C was again amended by the Act of August 13, 1963, P. L. 703, 15 P.S. §2852-1011C (Supp. 1965). This amendment deleted the words "For the purposes of this section" and substituted, instead, the words "For the purposes of determining jurisdictions of courts within this Commonwealth". This amendment became effective on August 13, 1963, prior to the filing of the complaint in the Doline case. Assuming, arguendo, but not deciding that the Legislature by this amendment intended to divorce subsection C from the rest of §2852-1011, and create a test for doing business irrespective of the situs of the acts or omissions giving rise to the cause of action, we conclude that appellant is not "doing business" in this Commonwealth within that definition.

Appellee rely chiefly upon the *Giuliano v. Alitalia Airlines, Inc.,* 218 F. Supp. 78 (1963). Alitalia is a commercial airline organized under the laws of Italy. It operates no regularly scheduled flights into or out of Pennsylvania, but has flown various chartered flights out of Philadelphia and, on at least one occasion, an Alitalia jet has landed in Philadelphia when weather made landing in New York impossible. Alitalia does, however, have two offices in Pennsylvania, employing eleven persons supervised by a district sales manager. Property in the form of furniture and office supplies is owned in Pennsylvania, and deposits of monies received by various travel agencies are remitted to the Philadelphia office which deposits monies received in a Philadelphia bank. Chief Judge CLARY in his very excellent opinion stated:

"Defendant argues that the five charter flights that have landed in Philadelphia were contracted for in New York and were under the direction and control of the charterer. It also points out that the travel agents representing defendant are in no sense 'legal' agents. But even if the Court were to agree with these contentions, Alitalia is not able to escape the consequences of the fact that it has employees in Pennsylvania who are selling tickets and thus, binding the company. The requirement that the employee confirm the availability of space with the New York reservation department before making a ticket sale does not render the employee's actions less binding. In reality, this is not the case of a representative who solicits an offer which is transmitted to an out-of-state principal for acceptance or rejection. Rather, the more correct analogy is to the salesmen who must check the stockroom supply before making a sale.

"The Shambe case stated that 'solicitation plus' in Pennsylvania required that: (1) The company must be present in the State; (2) by an agent; (3) duly authorized to represent it in the State; (4) the business transacted therein must be by or through such agent; (5) the business engaged in must be sufficient in quantity and quality; and (6) there must be a statute making such corporations amenable to suit. Lutz held this rule to require that the agent must have the power to bind the corporation, which power these employees do have. The facts of the Shambe case satisfied all of these requirements except number 5. The Court believes that in this case one million dollars worth of passenger and freight sales passing through the Philadelphia office is more than sufficient quantity and quality. Shambe v. Delaware & Hudson R. R. Co., supra, Convery v. Clairol, Inc., 123 F. Supp. 29 (E.D. Pa. 1954)."

Appellant relies on our recent case of *Namie v. Di-Girolamo*, 412 Pa. 589, 195 A. 2d 517 (1963). DiGirolamo was a manufacturer's representative for Belgrade Shoes. He resided in Pittsburgh and advertised in the classified pages of the Pittsburgh Telephone Directory as "Belgrade Shoe Co., Moxees Division, Representative—Henry T. DiGirolamo". Belgrade exercised no control over the methods employed by DiGirolamo in contacting the various customers, and the only items Belgrade supplied were various samples of shoes. DiGirolamo was paid on a draw against commission and was responsible for his own Federal Social Security taxes and other various withholding obligations. DiGirolamo had no authority to bind the corporation to any contract nor was he reimbursed for any expenses except those incurred while attending, at the invitation of the corporation, an annual convention in New York. Belgrade stated that it did not own or rent any office space in Pennsylvania and that either party could discontinue its association at any time. It should be noted that DiGirolamo was a member of a company group insurance plan on which the company paid the premium. In that case, we held: ". . . that the relationship of DiGirolamo to Belgrade was that of an independent contractor, not that of servant or employee. The cases of Johnson v. Angretti, 364 Pa. 602, 73 A. 2d 666 (1950), and Feller v. New Amsterdam Casualty Co., 363 Pa. 483, 70 A. 2d 299 (1950), have enumerated factors to be considered in determining the nature of an agency relationship. However, the existence of all or some of the indicia in a given case is not necessarily controlling; each case must be decided on its own facts. Stepp v. Renn, 184 Pa. Superior Ct. 634, 135 A. 2d 794 (1957)."

In the instant case, as in DiGirolamo, the appellant had no right to control and did not, in fact, control the activities of Mrs. Sternman as to her time spent at

work and the manner in which she conducted her operation. Either party apparently had the right to terminate the agreement existing at any time, as the record is bare of any evidence of any type of binding contract by the appellant and Mrs. Sternman. . A careful review of the record satisfies us that the appellant was represented in the Commonwealth by an independent contractor, and that the corporation itself was not doing business in the Commonwealth within the meaning of the statute.

The orders dismissing appellant's preliminary objections are reversed and the actions against appellant are dismissed for want of jurisdiction over the person.

Mr. Justice EAGEN concurs in the result.

Mr. Justice MUSMANNO dissents.